IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANITA RENEE BURTON, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 16-2778 |
| NANCY A. BERRYHILL[1], | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
|     Defendant. | : | |

**MEMORANDUM AND OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                          February 12, 2018

Plaintiff, Vanita Renee Burton, ("Plaintiff"), brought this counseled action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's decision denying her claims for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383 (the "Act"). This matter is before me for disposition, upon consent of the parties.[2] For the reasons set forth below, I deny Plaintiff's request for review.

**I.     PROCEDURAL HISTORY**

Plaintiff filed for SSI on February 15, 2013, alleging disability due to osteoarthritis and back pain. (R. 203-09, 224). The Commissioner initially denied Plaintiff's application on June

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted as the defendant in this case.

[2] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. (Consent and Order, ECF No. 17).

4, 2013. (R. 155-59). Following Plaintiff's timely request for review, an administrative law judge ("ALJ") held a hearing on August 9, 2014. (R. 160-62, 79-119). Plaintiff, represented by an attorney, and a vocational expert ("VE") appeared and testified. (R. 86-119). After the hearing, Plaintiff submitted additional evidence, which was considered by the ALJ. (R. 135, 472-577).

On September 18, 2014, the ALJ issued a decision finding Plaintiff not disabled and not entitled to benefits under the Act. (R. 132-52). Plaintiff filed a request for review with the Appeals Council. (R. 17-18). On April 4, 2016, the Appeals Council denied Plaintiff's appeal, making the ALJ's decision the final decision of the Commissioner. (R. 1-5). Plaintiff subsequently filed the instant action to appeal the Commissioner's decision. (Compl., ECF No. 3, Brief and Statement of Issues in Support of Request for Review, ECF No. 15 [hereinafter "Pl.'s Br."]). The Commissioner filed a Response. (Resp., ECF No. 18).

## II.     FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety, and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on September 17, 1963. (R. 46, 220). She was fifty years old at the time of the administrative hearing. Plaintiff completed high school; her past relevant work included positions as a department manager and a cashier. (R. 46, 87, 146-47, 225).

Plaintiff presented to the Albert Einstein emergency department on October 26, 2010, complaining of ongoing back pain. (R. 366, 368). Plaintiff appeared oriented with a normal mood and affect. (R. 369). Physical examination revealed no motor or sensory deficits, normal reflexes and gait, and non-tender full range of motion. (R. 369). Treatment notes documented

muscle spasms in Plaintiff's lower back. (R. 366, 369). Plaintiff was discharged to home in with instructions to follow up with her primary care provider. (R. 366-67).

Between March 2010 and June 2014, Plaintiff treated with her primary care physician, Dr. Joseph Gold, for a variety of ailments including knee, hip, back, and shoulder pain. (R. 371-416, 444-71). Dr. Gold ordered radiology studies of Plaintiff's right shoulder, knees and cervical spine. (R. 348, 356, 375, 388). X-rays of Plaintiff's right shoulder taken in August 2012 showed "faint soft tissue calcifications . . . most likely representing calcific tendinitis of the rotator cuff." (R. 356). X-rays of Plaintiffs knees taken in May 2013 were interpreted as showing "stable" minimal narrowing of the medial compartment with no evidence of acute fractures, soft tissue abnormalities, or supra-patellar effusion. (R. 350-51). A July 2013 x-ray of Plaintiff's cervical spine was unremarkable. (R. 348).

Treatment notes from Dr. Gold reflected Plaintiff's "normal" musculoskeletal and psychiatric systems. (R. 374, 376, 381, 383, 387, 454). Upon physical examination, Dr. Gold observed that Plaintiff demonstrated normal gait, range of motion and stability. (R. 374, 381, 383, 387, 456, 470). Plaintiff also exhibited normal range of motion and muscle strength in her upper and lower extremities. (R. 374, 383, 387). With regard to Plaintiff's mental status, Dr. Gold described Plaintiff as cooperative, alert, in no acute distress with intact memory, judgment and insight, with appropriate mood and affect. (R. 381, 454-56). On December 20, 2012, Plaintiff reported to Dr. Gold that she was experiencing audio and visual hallucinations. Dr. Gold noted that Plaintiff was receiving mental health follow up care from another provider. (R. 374, 377, 381-84).

Between June 2012 and April 2014, Plaintiff received mental health treatment on seven occasions from Northwest Human Services. (R. 317-331, 419-43). Plaintiff continued to report auditory and visual hallucinations. (R. 321, 327, 420, 430, 437). Upon mental status

3

examination, Plaintiff appeared alert, oriented, cooperative, and calm. (R. 327, 423, 437). She displayed appropriate thought content; logical, oriented and goal-directed thought process; normal and coherent speech; and fair judgment and insight. (R. 327, 427, 437). The Northwest Human Services' evaluator reported that Plaintiff showed no evidence of impaired concentration or attention. (R. 327, 427, 437). Therapy and medication were recommended as follow up care. (R. 317-20, 329, 440-43)

Plaintiff also received physical therapy sporadically between October 2012 and December 2013. (R. 472-563). Plaintiff initially attended physical therapy for right upper extremity pain. (R. 536-63). Upon discharge, she reported doing well, experiencing less pain, and meeting her goals, including independently cleaning her home with less difficulty. (R. 539-41, 541, 544, 546, 553). Plaintiff returned to physical therapy in May 2013 to address complaints of knee pain. (R. 519, 529). After completing a course of treatment, Plaintiff reported being "very satisfied" with the results and meeting her stated goals of increased functional ability. (R. 513-14, 521, 524, 526). She also received physical therapy through the summer of 2013 to address pain in her upper extremities. (R. 502-11). In September 2013, Plaintiff injured her foot, so returned to physical therapy. (R. 473-94). At the conclusion of treatment, Plaintiff noted less pain in her foot and improved ability to ambulate. (R. 475, 478-79).

On May 17, 2013, Plaintiff saw state consultative examiner Dr. David Chomsky, M.D., for a disability evaluation. (R. 337-41). Plaintiff complained of pain in her right knee, low back, and right shoulder. (R. 337-38). Dr. Chomsky described Plaintiff as alert, cooperative, and friendly. (R. 339). Upon examination, he reported no peripheral edema in Plaintiff's extremities. (R. 340). Plaintiff's knees "clicked" and her right knee was "really movable." (*Id*.). Dr. Chomsky observed that Plaintiff walked slowly, "tapering her right lower extremity." He

noted that Plaintiff was able to walk on heels and toes without her cane but appeared to lose balance "somewhat readily." (*Id*.). According to Dr. Chomsky, Plaintiff demonstrated normal range of motion in her lumbosacral spine and shoulders; normal flexion in both knees; normal sensation and reflexes; and no tenderness. She displayed "no problem lifting and grasping, has normal use of her hands." (R. 340-41). Dr. Chomsky stated "[t]here is no obvious evidence of radiculopathy and/or discogenic disease although [Plaintiff] complains of [pain] in her lower back especially when she rises from the sitting position and walks." (R. 341). Based on his examination, he offered the opinion that Plaintiff could perform a range of medium level exertional work.[3] (R. 342-47). He imposed no restrictions on her use of hands and feet, (R. 344), and no postural or environmental limitations. (R. 345-47).

On June 13, 2013, state non-examining physician Dr. Louis B. Bonita completed a review of Plaintiff's records and assessed her physical RFC. (R. 120-30). Dr. Bonita determined that Plaintiff was able to lift and carry twenty pounds occasionally, ten pounds frequently, and sit, stand or walk about six hours in an eight-hour workday. (R. 125). He imposed postural limitations that included no climbing ladders, ropes or scaffolds, and occasionally climbing stairs, balancing, stooping, kneeling, crouching or crawling. (R. 125-26). He did not impose manipulative, visual, communicative, or environmental restrictions on Plaintiff's ability to work. (R. 126).

With regard to non-medical record evidence, Plaintiff completed a "Function Report-Adult" and Supplemental Function Questionnaire. (R. 232-39, 240-41). Plaintiff reported pain in her back, knees, fingers, and elbow, (R. 232, 240), that impacted her ability to lift, squat, bend, stand, walk, kneel, complete tasks and use her hands. (R. 237). According to Plaintiff, she cared

---

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 416.967(c).

for her granddaughter, taking her to school, bathing her, and helping with her homework. (R. 233, 430). She also reported preparing meals, cleaning, doing laundry, shopping, and getting out on a daily basis by walking or using public transportation. (R. 234-35). Plaintiff stated that she was able to spend time with others "talk[ing] and laugh[ing]," and gets along with family, friends, neighbors and authority figures. (R. 236-38). Plaintiff noted that she was able to follow written and spoken instructions and handle stress "pretty good," but claimed that she is unable to finish what she starts. (R. 237-38). She reported being "very moody and quick tempered." (R. 238).

Plaintiff testified at the August 19, 2014 administrative hearing that she is unable to work because her knees swell, hurt and sometimes "give out" on her. (R. 91). According to Plaintiff, pain medications provided intermittent relief; she also testified that smoking marijuana helped with her pain. (R. 91-92, 95). She testified that walking more than three blocks made her legs tired. (R. 100). She could sit for one to two hours. (R. 101-02). She stated that she would be able to lift up to five pounds at a time. (R. 117-18). She testified that she uses a cane for support when she is out, but not at home. (R. 116). She reported that she no longer cares for her granddaughter because of a change in custody arrangements. (R. 108-09). According to Plaintiff, she experienced visual and auditory hallucinations that made it difficult to maintain attention and focus. (R. 104-06). She also reported a recent diagnosis of bi-polar disorder. (R. 93).

## III.   STANDARD OF REVIEW

A claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009). An ALJ must conduct a five step sequential analysis when reviewing a claim. For this analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit the claimant's ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a residual functional capacity ("RFC") to perform work with the claimant's limitations and can return to the claimant's previous work with that RFC[4]; and (5) can perform any other work existing in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). The claimant bears the burden of establishing steps one through four, and then the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the national economy, in light of her age, education, work experience, and RFC. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

---

[4] RFC is defined as the most an individual can still do despite her limitations. 20 C.F.R. § 416.945(a)(1).

The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

IV. **THE ALJ'S DECISION**

In her September 18, 2014 disability decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 15, 2013, the application date. (R. 137).

At step two, the ALJ found that Plaintiff had the following severe impairments: residuals of right elbow ulnar decompression surgery, right shoulder tendinitis, lumbar strain, degenerative joint disease of the knees, and bipolar II disorder with psychotic features. (*Id*.).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that satisfied the criteria of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 138-41). The ALJ then found that Plaintiff has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b)[5], except:

> She can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, and crawl. She can never kneel or crouch. She can occasionally reach overhead and frequently in any direction with the right upper extremity. She has no limitations to reach with the left upper extremity. The claimant has no handling, fingering or feeling limitations. She is restricted to occasional exposure to extreme cold and heat, humidity, and wetness. She is restricted to simple tasks, occasional contact with the public, and frequent contact with supervisors and co-workers.

---

[5] "Light work" is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b). In order to perform a full range of light work, an individual must be able to stand or walk, off and on, for a total of approximately six hours of an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, at *8 (S.S.A. Jan. 1, 1983).

(R. 141). Based on this RFC and the testimony of the VE, the ALJ found at step four that Plaintiff was unable to perform her past relevant work as a department manager or cashier. (R. 146-47).

The ALJ proceeded to step five, and determined based on the testimony of the VE that there existed other jobs in the national economy that Plaintiff was able to perform with her RFC. (R. 147-48). Those jobs included the representative unskilled positions of laundry worker, sorter, and packer. (R. 148). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.*).

## V.     DISCUSSION

Plaintiff challenges the ALJ's decision on two primary grounds. First, she argues that the RFC is not supported by substantial evidence. (Pl.'s Br. 3-7). Next, Plaintiff contends that the ALJ erred at Step 5 of the sequential analysis by failing to accurately reflect her impairments in the hypothetical to the VE, and by failing to reconcile discrepancies between the VE testimony and Dictionary of Occupational Titles, ("DOT"). (Pl.'s Br. 7-8). The Commissioner counters that substantial evidence supports the ALJ's RFC assessment, and that the testimony of the VE is consistent with the DOT.[6] (Resp. 5-12). For the reasons set forth below, I agree with the Commissioner that substantial evidence supports the ALJ's decision, and that decision is free of harmful legal error.

---

[6] The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

9

### A. Substantial Evidence Supports the RFC

Plaintiff first argues that the ALJ failed to fully develop the administrative record. Specifically, Plaintiff maintains that the ALJ erred by not requesting a treating source opinion from Dr. Gold, Plaintiff's primary care physician. This argument lacks merit. While the ALJ does have the burden of developing a full and fair record, *see Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995), the ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. *See* 42 U.S.C. § 423(d)(5)(A) (providing that "[a]n individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). "It is not unreasonable to require the claimant, who is in a better position to provide information about [her] own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[7] Here, Plaintiff did not present a medical source opinion from Dr. Gold. She asked for, and was granted, the opportunity to supplement the record after the administrative hearing, but did not include further evidence from Dr. Gold. (R. 135).

Moreover, the ALJ did not have an obligation to request a medical source statement from Dr. Gold. The regulations provide that an ALJ *may* re-contact a medical source for clarification, if such clarification is needed to make the disability determination. 20 C.F.R. § 416.920b(c) (emphasis added). In this case, there was nothing to indicate that the ALJ was unable to make the disability determination based on the evidence in the record. To the contrary, the administrative record contained Dr. Gold's treatment and office notes from the relevant time, and

---

[7] In the present case, the ALJ's duty to develop the record was not "heightened" as it would be with an unrepresented claimant because Plaintiff was represented throughout the administrative process. *See Smith v. Harris*, 644 F.2d 985, 989 (3d Cir. 1981) (finding that "where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role." (citation omitted)).

the ALJ thoroughly discussed the care provided by Dr. Gold in her decision. The ALJ also considered other records relevant to Plaintiff's physical impairments, such as the results from objective radiology studies ordered by Dr. Gold. (R. 143-44, 348-51, 356-59, 371-416, 444-471). Dr. Gold documented Plaintiff's "normal" musculoskeletal and psychiatric systems; normal gait, range of motion and stability; and specifically, normal range of motion, stability, and muscle strength in her upper and lower extremities. (R. 374, 376, 381, 383, 387, 454, 456). In addition, the ALJ also considered Plaintiff's testimony and description of her activities of daily living that included, *inter alia*, caring for her granddaughter, preparing simple meals, traveling independently outside her home (either walking or taking public transportation), and shopping. (R. 142). Consequently, the record evidence was sufficient for ALJ to make a disability determination, and the ALJ did not err by failing to request a clarification or additional information from Dr. Gold.

For similar reasons, I reject Plaintiff's argument that the ALJ was required to request a psychological consultative examination. The burden is on plaintiff to establish that a consultative examination is necessary for the ALJ to make the disability determination. *See* 20 C.F.R. § 416.917. An "ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Thomas v. Halter*, 45 Fed. Appx. 146, 149 (3d Cir. 2002) (not precedential). Plaintiff did not make such a showing here. Records from Northwest Human Services described Plaintiff as alert, friendly, cooperative, properly oriented to time, place and person. She demonstrated a calm and appropriate affect; logical, organized, and goal-directed thought processes; normal and coherent speech; intact memory; and fair insight and judgment. (R. 144-45, 327, 423, 427, 437). Although Plaintiff testified to problems with maintaining attention and focus, the records from Northwest Human Services did not reflect these issues.

Instead, mental health providers indicated that Plaintiff showed no evidence of any impairment in concentration or attention. (R. 145, 327, 427, 437). While the regulations permit the ALJ to consult a medical expert to review the evidence, she was not required to do so. *See* 20 C.F.R. § 416.927(e)(2)(iii); *Jakubowski v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 104, 107 (3d Cir. 2007) (not precedential) ("[A]n ALJ is not required under the Social Security regulations to seek out medical expert testimony."). I find that the record contained sufficient evidence for the ALJ to make a disability determination regarding Plaintiff's mental impairments, without the need to seek out a psychological consultative examination.

Plaintiff also argues that the ALJ improperly weighed the medical opinions of state consultative examiner Dr. Chomsky and state reviewing physician Dr. Bonita. I disagree. Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). The Regulations provide special deference to medical opinions from treating sources, *see id*. § 416.927(c)(2). However, where, as here, there is no treating source opinion entitled to controlling weight, the ALJ must weigh other medical opinions according to the factors set forth in 20 C.F.R. § 416.927(c). Pursuant to subsection (c)(4), "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." The Court reviews the ALJ's assessment of non-treating medical opinions such as the opinions of Dr. Chomsky and Dr. Bonita under the deferential substantial evidence standard. *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir.1994). As long as the ALJ explains in the decision the weight given, and as long as a reasonable person would find the evidence adequate to support the stated reasoning, the Court will uphold the ALJ's assignment of weight to a non-treating source opinion.

In this case, the ALJ assigned "little weight" to state consultative examiner Dr. Chomsky's opinion that Plaintiff was capable of performing medium level work. (R. 143). The ALJ gave "partial weight" to the opinion of state reviewing physician Dr. Bonita that Plaintiff could perform light work with no limitations. (R. 146). The ALJ considered both opinions and concluded that Plaintiff could perform light work with physical and mental limitations. As such, the ALJ crafted an RFC with greater restrictions on Plaintiff's physical and mental functional capacity than recommended by either state physician. The ALJ "found additional limitations are warranted in consideration of the claimant's combined impairments." (R. 146).

Substantial evidence supports the ALJ's consideration of the non-treating source opinions, and the ALJ's determination that Plaintiff could perform limited light work. First, Plaintiff herself reported that she can walk, climb stairs, bend and stoop, although she experiences pain doing so. She maintained the ability to shop, cook, do some housework, and care for her granddaughter by bathing her, taking her to school, and assisting with her homework. Physical examinations showed that Plaintiff had normal sensation, reflexes and gait; normal range of motion in her lumbosacral spine and shoulders; and normal muscle strength, range of motion and stability in her upper and lower extremities. She showed no problem lifting and grasping, and normal use of her hands. Objective testing further supported the ALJ's physical RFC assessment. X-rays of Plaintiff's right shoulder, knees, and spine were essentially unremarkable. Finally, physical therapy records documented successful treatment of Plaintiff's knee, shoulder, back and foot pain. Accordingly, substantial evidence supports the weight afforded to the opinions of Drs. Chomsky and Bonita, and the physical RFC assessed by the ALJ in her opinion.[8]

---

[8] Plaintiff briefly argues that the ALJ erred by not including limitations in the RFC related to pushing, pulling, handling, fingering, or use of foot controls. ( Pl.'s Br. 6, ECF No.

13

Plaintiff next argues that the RFC restricting her to simple tasks did not adequately account for her difficulty maintaining attention and focus as a result of her bipolar disorder. (Pl.'s Br. 6-7, ECF No. 15). The Commissioner counters that Third Circuit precedent and substantial evidence support the mental limitations included in the RFC. I agree with the Commissioner.

In the precedential Third Circuit decision of *Ramirez v. Barnhart*, the Court explained that findings of limitation in the broad functional areas, though not an RFC assessment, play a role in steps four and five, and thus need to be accounted for the RFC and hypothetical to the VE. 372 F.3d at 555. In *Ramirez*, the ALJ limited the claimant to "simple one or two step tasks." *Id.* at 554. The Third Circuit held that limiting the claimant to one-to-two step tasks was not sufficient to account for the ALJ's observation at steps two and three that Ramirez "often suffered from deficiencies in concentration, persistence, or pace." *Id.* The Court also found that claimant's mental illness impacted her ability to meet production quotas, thus putting at issue an ability to sustain pace. *Id.* at 554-55.

The instant case is distinguishable from *Ramirez*. Here, there is no medical evidence that Plaintiff often suffers from deficiencies in concentration, persistence and/or pace. In fact, records from Northwest Human Services indicated that Plaintiff showed no evidence of impaired concentration or attention. (R. 327, 427, 437). Moreover, the ALJ in this case included additional limitations in the RFC not present in *Ramirez* by restricting Plaintiff to occasional contact with the public. Further, unlike *Ramirez*, Plaintiff did not identify evidence that she struggled with pace, or that the jobs the VE identified required daily production quotas or a degree of pace to maintain employment.

---

15). I am not persuaded by this argument. Physical therapy successfully addressed Plaintiff's right upper extremity pain and injured foot. (R. 427-63). The record does not support the argument that additional restrictions were required in the assessed RFC.

Here, the ALJ determined at Step 2 that Plaintiff had moderate difficulties in concentration, persistence and pace, and subsequently imposed mental restrictions in the RFC that limited Plaintiff to "simple tasks, occasional contact with the public, and frequent contact with supervisors and co-workers." (R. 141). The Third Circuit has found similar restrictions adequately account for a claimant's moderate difficulties with concentration, persistence and pace. *See*, *e.g.*, *McDonald v. Astrue,* 293 Fed. App'x 941, 946 85 n.10 (3d Cir. 2008) (limitation to "simple, routine tasks" was sufficient to account for moderate restrictions in concentration, persistence, and pace because unlike in *Ramirez,* the claimant did not "often" suffer from these deficiencies) (not precedential); *Menkes v. Astrue,* 262 F. App'x 410, 412 (3d Cir. 2008) (same); *see also Jefferson v. Colvin*., No. 1-01357, 2017 WL 2199064, at *1 (E.D. Pa. May 18, 2017) (distinguishing *Ramirez* and finding RFC limiting Plaintiff to unskilled work with no fast pace or quota production standards and only occasional contact with the public sufficient to account for moderate limitations in concentration, persistence, and pace); *Cf. Drelling v. Colvin*, No 14-CV-2211, 2016 WL 245288, at *8 (E.D. Pa. Jan. 20, 2016)*,* 2016 WL 245288, at *8 (finding error where hypothetical made no mention of plaintiff's mental limitations, despite finding moderate impairment concentration, persistence, and pace). This is particularly true where, as here, the record is devoid of evidence that claimant has difficulty maintaining pace.

Accordingly, I find that the RFC adequately accounted for Plaintiff's credibly established mental limitations, and that substantial evidence supports the ALJ's determination.[9]

---

[9] Plaintiff also argues that the hypothetical to the VE did not include all Plaintiff's mental limitations. I disagree. As discussed *supra*., the ALJ included Plaintiff's credibly established mental restrictions in the RFC and posed a hypothetical to the VE based on those restrictions. *See Walsh v. Colvin*, No. 15-2550, 2017 WL 930295, at *7-8 (E.D. Pa. March 9, 2017).

## B. ALJ Appropriately Relied Upon Testimony from VE at Step Five

Lastly, Plaintiff argues the ALJ failed to reconcile "discrepancies between the VE testimony and the DOT." (*Id*. at 7). I am not persuaded by Plaintiff's assertion. In steps four and five of a disability determination, "a [VE] . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 416.960(b)(2). The purpose of posing a hypothetical is to determine whether a claimant has the RFC to perform either the claimant's previous work or any work that exists in the national economy. *Ramirez*, 372 F.3d at 549. The ALJ's hypothetical "must accurately convey to the [VE] all of a claimant's credibly established limitations" in order to rely upon the VE's testimony as substantial evidence. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

The ALJ determined that Plaintiff retained the RFC to perform less than the full range of light work with additional physical and mental limitations. Relevant to Plaintiff's Step 5 argument, the ALJ determined that Plaintiff can only "occasionally reach overhead and frequently in any direction with the right upper extremity. She has no limitations to reach with the left upper extremity." (R. 141). The ALJ first posed a hypothetical to the VE that did not include the enumerated reaching limitations. (R. 111). Based on the first hypothetical, the VE testified that an individual with those limitations could not perform Plaintiff's past work as a counter attendant, but identified three representative unskilled occupations that did not require overhead reaching. (R. 112-14). The ALJ then posed a second hypothetical that included a limitation of occasional reaching overhead with the right shoulder, frequent reaching in all other directions on the right side, and no reaching restrictions on the left side. (R. 112-13). In

response, the VE testified that those limitations would not change his response with regard to the positions of sorter and laundry worker. (R. 113-14). The VE also noted that "there are packing jobs that only require frequent reaching and handling," but that the number of positions would be reduced by 50 percent. (R. 114-15). Finally, the VE confirmed that his testimony was consistent with the DOT. (R. 115). Based on the hypothetical and response of the VE, I find that the testimony of the VE constitutes substantial evidence in support of the ALJ's step 5 analysis.

## VI.    CONCLUSION

After careful review of the ALJ's decision, the record, and the parties' arguments, I find that substantial evidence supports the ALJ's decision, it is free from harmful legal error, and remand for the consideration of new evidence is not appropriate.

BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE